UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CRIMINAL NO. |
| | ) | |
| v. | ) | VIOLATIONS: 05-10080-NG |
| | ) | |
| ROB MAILLOUX, a/k/a | ) | 18 U.S.C. § 1343 |
| Oscar E. Mailloux, Jr. | ) | (Wire Fraud - 8 Counts) |
| Defendant | ) | |

INDICTMENT

THE GRAND JURY CHARGES THAT:

INTRODUCTION

At all times material to this Indictment:

1. The defendant, ROB MAILLOUX (hereinafter referred to as "defendant MAILLOUX") a/k/a Oscar E. Mailloux, Jr., was an individual residing in Massachusetts.

2. "Ms. H" was an individual residing in Virginia.

3. MatchMaker.com was an online dating service which allowed members to post and respond to personal classified advertisements, and to communicate with each other via e-mail through the Internet.

4. Defendant MAILLOUX had access to the e-mail account XXXX609@attbi.com and to the America Online e-mail account XXXXXXXXXXSets@aol.com, which e-mail accounts he used to communicate with Ms. H.

5. Ms. H had access to the e-mail account XXXmdh@yahoo.com.

6. Fleet Account No. XXXXXXX436 (hereinafter referred to as "Fleet Account") was a personal bank account held in the names of defendant MAILLOUX and his mother, "Phyllis

Mailloux," (hereinafter referred to as "Mrs. Mailloux") which account was controlled by defendant MAILLOUX.

## THE SCHEME TO DEFRAUD

7. From in or about November 2002 to in or about June 2003, defendant MAILLOUX devised and executed a scheme in Massachusetts and elsewhere, whereby he defrauded Ms. H of money and property, in the amount of approximately $176,365.83 by means of false and fraudulent pretenses, representations and promises.

8. It was part of the scheme to defraud that on or about November 29, 2002, defendant MAILLOUX began a series of communications via e-mail from Massachusetts with Ms. H, who had contacted him through MatchMaker.com after reading his personal profile, which provided information about who he was and the type of person he was interested in meeting to establish a romantic relationship.

9. It was further part of the scheme that beginning in or around November 2002, defendant MAILLOUX befriended Ms. H via e-mail and telephone conversations, in which he falsely represented to Ms. H that he owned substantial assets, including a house worth approximately $1,000,000 and a company that employed 15 individuals, purportedly engaged in the business of developing computer programs. In fact, as defendant MAILLOUX well knew, he did not own any house or company, and was a man with very limited financial means.

10. It was further part of the scheme that beginning on or about December 12, 2002, defendant MAILLOUX falsely led Ms. H to believe that his "company" was being sued, that all of his assets were "frozen," and that after the successful completion of the lawsuit, he would have access to his assets and would repay Ms. H any money that she loaned him. After Ms. H loaned

money to defendant MAILLOUX, he falsely represented to Ms. H that his "lawsuit" was repeatedly delayed, in order to explain his failure to repay Ms. H and to induce her to provide him with more money.

11. It was further part of the scheme that on or about December 17, 2002, defendant MAILLOUX induced Ms. H to wire $2,132.00 via Western Union MTCN XXXXXXX557 from Virginia to defendant MAILLOUX in Massachusetts, by falsely representing that he needed the money to buy a new laptop computer for his "business." In fact, as defendant MAILLOUX well knew, he did not own a business, had no frozen assets, and planned to use the computer for his own personal benefit.

12. It was further part of the scheme that defendant MAILLOUX, beginning on or about December 27, 2002, on various dates and at different times, impersonated his nephew "NM" in electronic chats through the internet with Ms. H, in order to fraudulently affirm defendant MAILLOUX's romantic interest in Ms. H and to corroborate his other false representations to Ms. H.

13. It was further part of the scheme that defendant MAILLOUX, from on or about December 28, 2002 to on or about June 9, 2003, impersonated his mother, Mrs. Mailloux, using the e-mail account XXXXXXXXXXSets@aol.com, to send repeated e-mails to Ms. H in order to cause Ms. H. to falsely believe that defendant MAILLOUX's mother knew of the relationship, and to fraudulently affirm defendant MAILLOUX's romantic interest in Ms. H.

14. It was further part of the scheme that in or about December 2002 through January 2003, on various dates and at numerous times, defendant MAILLOUX, purporting to be Mrs. Mailloux or NM, made false representations to Ms. H, via e-mails and through instant messages via

the internet, claiming that defendant MAILLOUX had been stabbed by gang members and robbed of his computer and other items while driving from Massachusetts to Virginia to visit Ms. H. In fact, as defendant MAILLOUX well knew, he had not set out to visit Ms. H, nor been stabbed or robbed, but had made these false representations, purporting to be his mother and nephew, to explain his failure to meet with Ms. H, to limit communication with Ms. H, and to induce Ms. H to purchase a laptop computer for his "business."

15. It was further part of the scheme that on or about January 6, 2003, defendant MAILLOUX caused Ms. H to mail him her L. L. Bean credit card, number XXXXXXXXXXXX-0331 (hereinafter referred to as "credit card"), by making false representations that led Ms. H to falsely believe that defendant MAILLOUX was without financial means due to his company's "lawsuit." Defendant MAILLOUX falsely represented to Ms. H that the court date for the "lawsuit" against him was delayed, that he needed money to support his "business" until his assets were "unfrozen," and that he would be able to repay all debts to Ms. H once the lawsuit concluded. In fact, as defendant MAILLOUX well knew, there was no ongoing civil lawsuit against him, he had no need for money to support his nonexistent business, and he did not own any frozen assets with which to repay Ms. H.

16. It was further part of the scheme that on or about January 9, 2003, defendant MAILLOUX induced Ms. H to allow him continued use of her credit card by falsely representing to her that money he withdrew using Ms. H's credit card at the Mohegan Sun Casino, approximately $2,079.98, was used to pay the attorney handling his "lawsuit." Defendant MAILLOUX falsely represented to Ms. H that he never gambled and that he only visited the casino because it did not

require a Personal Identification Number for credit card cash withdrawals. In fact, as defendant MAILLOUX well knew, he gambled regularly and had no attorney handling his "lawsuit."

17.     It was further part of the scheme that from on or about January 8, 2003 through on or about April 26, 2003, defendant MAILLOUX used Ms. H's credit card to make approximately $82,779.59 in purchases and cash withdrawals, which he used for his own personal expenses and benefit, while falsely representing to Ms. H that he used the money mainly for business expenses and to pay attorney's fees while awaiting the resolution of his "lawsuit."

18.     It was further part of the scheme that from in or about March 2003 to in or about June 2003, defendant MAILLOUX, falsely purporting to be Mrs. Mailloux, misled Ms. H into believing that defendant MAILLOUX was called to the Pentagon to work on computer operations and was then sent overseas to the Middle East to participate in the war in Iraq, during which he received two Purple Hearts from Tommy Franks, and that "Mrs. Mailloux" was managing defendant MAILLOUX's finances while he was supposedly away. Defendant MAILLOUX used these misrepresentations to limit his communication with Ms. H, to induce Ms. H to continue to provide money for his "company," and to induce Ms. H to postpone her requests for repayment.

19.     It was further part of the scheme that in or about March 2003, defendant MAILLOUX induced Ms. H to wire a total of $45,433.16 from her Paine Webber Individual Retirement Account in New Jersey to defendant MAILLOUX's Fleet Account in Massachusetts, by falsely representing to Ms. H that he needed money to pay his "employees" and that if Ms. H gave the money to defendant MAILLOUX, he would make her a partner and bookkeeper in his "company." In fact, as defendant MAILLOUX well knew, he had no employees and could not make Ms. H a partner or bookkeeper in his nonexistent company.

20. It was further part of the scheme that on or around May 12, 2003, defendant MAILLOUX, falsely purporting to be Mrs. Mailloux, induced Ms. H. to wire approximately $22,000 from Virginia to defendant MAILLOUX's Fleet Account in Massachusetts by falsely representing that defendant MAILLOUX owed approximately $21,000 in corporate taxes and that soon his lawsuit would be settled and his assets unfrozen.

21. It was further part of the scheme that on or around May 20, 2003, defendant MAILLOUX, falsely purporting to be Mrs. Mailloux, induced Ms. H. to wire $8,000 from Virginia to defendant MAILLOUX's Fleet Account in Massachusetts by falsely representing that defendant MAILLOUX needed the money for business expenses and to pay the "mortgage" on his million-dollar house, promising Ms. H that he would repay her once his lawsuit was settled and his assets were unfrozen. In fact, as defendant MAILLOUX well knew, he did not own a house and planned to use the money for his own personal expenses and benefit.

22. It was further part of the scheme that on or about May 29, 2003, defendant MAILLOUX, falsely purporting to be Mrs. Mailloux, falsely represented to Ms. H that defendant MAILLOUX was missing in Iraq, and on or about June 8, 2003, falsely represented to Ms. H that defendant MAILLOUX's status was shifting from "Killed in Action" to "Missing in Action" to "Prisoner of War," while in fact defendant MAILLOUX was in the United States during this time.

## COUNTS ONE - EIGHT

(Wire Fraud - 18 U.S.C. § 1343)

THE GRAND JURY FURTHER CHARGES THAT:

23.     The allegations contained in paragraphs 1 through 22 are realleged and incorporated herein.

24.     On or about each of the dates set forth below, in the District of Massachusetts and elsewhere, the defendant,

> ROB MAILLOUX
> a/k/a
> Oscar E. Mailloux, Jr.,

having devised and executed a scheme and artifice to defraud, and to obtain money and property by means of false and fraudulent pretenses, representations and promises, did knowingly transmit and cause to be transmitted by means of wire communications in interstate commerce signals and sounds for the purpose of executing the scheme and artifice to defraud, as follows:

| COUNT | APPROX. DATE | WIRE COMMUNICATION |
|---|---|---|
| 1 | 12/17/2002 | Wire transfer in the amount of $2,132.00 from Ms. H in Virginia to defendant MAILLOUX in Massachusetts |
| 2 | 12/28/2002 | E-mail from defendant MAILLOUX's account XXXXXXXXXXSets@aol.com in Massachusetts to Ms. H in Virginia, purporting to be Mrs. Mailloux |
| 3 | 3/8/2003 | E-mail from defendant MAILLOUX account XXXX609@attbi.com in Massachusetts to Ms. H in Virginia, where he mentions "employees" |
| 4 | 3/12/2003 | Wire transfer in the amount of $23,665.00 from Ms. H in Virginia to defendant MAILLOUX's Fleet Account No. XXXXXXX436 in Massachusetts |

| 5 | 3/14/2003 | Wire transfer in the amount of $21,768.16 from Ms. H in Virginia to defendant MAILLOUX's Fleet Account No. XXXXXXX436 in Massachusetts |
| 6 | 4/5/2003 | E-mail from defendant MAILLOUX account XXXXXXXXXXSets@aol.com in Massachusetts to Ms. H in Virginia, purporting to be Mrs. Mailloux |
| 7 | 5/12/2003 | Wire transfer in the amount of $22,000.00 from Ms. H in Virginia to defendant MAILLOUX's Fleet Account No. XXXXXXX436 in Massachusetts |
| 8 | 5/20/2003 | Wire transfer in the amount of $8,000.00 from Ms. H in Virginia to defendant MAILLOUX's Fleet Account No. XXXXXXX436 in Massachusetts |

All in violation of Title 18, United States Code, Section 1343.

A TRUE BILL

_Roger Allen_
FOREPERSON OF THE GRAND JURY

_Carmen M. Ortiz_
Carmen M. Ortiz
Assistant United States Attorney

DISTRICT OF MASSACHUSETTS        March 24 2005

Returned into the District Court by the Grand Jurors and filed.

_[signature]_
DEPUTY CLERK
@ 2:20 PM
3/24/05

JS 45 (5/97) - (Revised USAO MA 6/29/04)

| Criminal Case Cover Sheet | U.S. District Court - District of Massachusetts |
|---|---|

**Place of Offense:** Hyannis    **Category No.** I    **Investigating Agency** USPS

**City** Hyannis    **Related Case Information:**

**County** Barnstable

Superseding Ind./ Inf. _____    Case No. _____
Same Defendant _____    New Defendant  X
Magistrate Judge Case Number _____
Search Warrant Case Number _____
R 20/R 40 from District of _____

**Defendant Information:**

Defendant Name  Rob Mailloux    Juvenile  ☐ Yes  ☒ No

Alias Name  Oscar Mailloux, Jr.

Address  135 Pitcher's Way, Hyannis, MA 02601

Birth date (Year only): 1954   SSN (last 4 #): 2173   Sex M   Race: Caucasian   Nationality: USA

Defense Counsel if known:  N/A    Address: _____

Bar Number: _____

**U.S. Attorney Information:**

AUSA  Carmen M. Ortiz    Bar Number if applicable  380390

Interpreter:  ☐ Yes  ☒ No    List language and/or dialect: _____

Matter to be SEALED:  ☐ Yes  ☒ No

☒ Warrant Requested    ☐ Regular Process    ☐ In Custody

**Location Status:**

Arrest Date: _____

☐ Already in Federal Custody as _____ in _____ .
☐ Already in State Custody _____    ☐ Serving Sentence    ☐ Awaiting Trial
☐ On Pretrial Release: Ordered by _____ on _____

Charging Document:  ☐ Complaint  ☐ Information  ☒ Indictment

Total # of Counts:  ☐ Petty _____  ☐ Misdemeanor _____  ☒ Felony  8

Continue on Page 2 for Entry of U.S.C. Citations

☐ I hereby certify that the case numbers of any prior proceedings before a Magistrate Judge are accurately set forth above.

Date: 3/23/05    Signature of AUSA: Carmen M. Ortiz

JS 45 (5/97) - (Revised USAO MA 3/25/02) Page 2 of 2 or Reverse

District Court Case Number (To be filled in by deputy clerk): _____

Name of Defendant    Rob Mailloux, a/k/a Oscar E. Mailloux, Jr.

## U.S.C. Citations

| Index Key/Code | Description of Offense Charged | Count Numbers |
|---|---|---|
| Set 1  18 USC 1343 | Wire Fraud | 1-8 |
| Set 2 | | |
| Set 3 | | |
| Set 4 | | |
| Set 5 | | |
| Set 6 | | |
| Set 7 | | |
| Set 8 | | |
| Set 9 | | |
| Set 10 | | |
| Set 11 | | |
| Set 12 | | |
| Set 13 | | |
| Set 14 | | |
| Set 15 | | |

ADDITIONAL INFORMATION: